W. G. HUNT and Another v. PITTS AGRICULTURAL WORKS.[1]

November 3, 1897.

Nos. 10,833—(68).

### Authority of Agent—Estoppel to Deny.

The defendant appointed L. & H. its agents to sell its threshers and thresher engines. The agents, without the authority or knowledge of the defendant, sold and warranted to plaintiffs a thresher engine of their own, but holding out and representing that they were selling it as agents of the defendant. L. & H. took the note for the purchase price payable to defendant, for the reason that they expected to turn it out in part payment of what they were owing defendant. Defendant refused to accept it, but, at the request of L. & H., indorsed it over to them for the sole purpose of

---

[1] Reported in 72 N. W. 813.

transferring the legal title. There was no evidence that defendant knew at this time that L. & H. had assumed to sell and warrant the engine as their agents, or that the transaction in which the note was given was anything else than a personal one of L. & H., in which, for their own convenience, they had taken a note payable to defendant. *Held*, that the defendant was not estopped from denying the authority of L. & H. to sell and warrant the machine as its agents.

### Same—Ratification of Agents' Acts.

Also that, upon the facts stated, the defendant did not ratify the prior unauthorized acts of its agents.

Appeal by defendant from an order of the district court for Polk county, Ives, J., denying its motion to set aside a verdict for $812 in plaintiffs' favor, and refusing to grant a new trial. Reversed.

*A. A. Miller*, for appellant.

*H. Steenerson*, for respondents.

MITCHELL, J.

This was an action to recover damages for the breach of a warranty of a grain-threshing engine alleged to have been sold to plaintiffs by the defendant through its agents Lowe & Huggard. Plaintiffs' counsel claims that it was an action to recover damages for the wrongful conversion of the purchase-money note, by reason of defendant's failing to return it when the engine failed to fulfill the warranty. The record does not sustain the claim. There is no allegation that the sale was conditional or on trial. The only reference to the return of the note is an allegation that, after the plaintiffs discovered that the engine did not comply with the warranty, and informed defendant's agents of that fact, they promised and agreed to return the note, but failed to do so. This amounts to nothing more than an allegation of a mere voluntary promise, made after the contract was fully executed. The court submitted the case to the jury on the theory that the action was exclusively one on a breach of warranty, and there is nothing in the record indicating that any other issue was tried by consent of parties.

There are numerous assignments of error, but, under the view we take of the case, it is only necessary to consider whether the evidence justified a verdict in favor of the plaintiffs. The following facts are undisputed or conclusively proven:

Lowe & Huggard were dealers in agricultural implements,—partly their own goods, and partly the goods of various manufacturers whose implements they sold on commission. Among these was the defendant, which was engaged in the manufacture of threshing machines and threshing engines in the city of Buffalo. The only evidence of the nature and extent of Lowe & Huggard's authority as such sales agents for the defendant is the written contract, Exhibit D.[2] The engine in question never belonged to the defendant, and was not of its manufacture. It belonged to one Lizee, who in 1886 gave a chattel mortgage on it to the defendant to secure payment of a promissory note. In April, 1887, defendant sold and transferred this note to Lowe & Huggard, which, of course, carried with it the equitable ownership of the collateral mortgage. Subsequently Lowe & Huggard, being about to take steps to enforce the mortgage, obtained Lizee's consent that they might sell the engine without foreclosure for the purpose of applying the proceeds on his note. In pursuance of this arrangement, Lowe & Huggard, in September, 1887, sold the engine to the plaintiffs, and took their note for the purchase money. This is the sale referred to in the complaint.

It will be observed that at this time defendant had no interest whatever in the engine. Lowe & Huggard were, in fact, acting for themselves, and in their own interests; but in making the sale they held out and represented to plaintiffs that they were making the sale as defendant's agent, and in its behalf. Defendant never authorized this, and, so far as appears, never knew of it until the commencement of this action in 1896. Defendant had furnished Lowe & Huggard blank notes for use in selling its machinery. In making the sale to plaintiffs, Lowe & Huggard used one of these blanks, thus making the note payable to the defendant, for the reason, as one of them testifies, that they expected to turn out this note, with others, in settlement of their commission account with defendant. When Lowe & Huggard came to settle with defendant, the note was not satisfactory, and the defendant refused to accept it, but, on request of Lowe & Huggard, indorsed it to them without recourse, for

2 In which was a clause by which the agents agreed to sell no other engines than those manufactured by the defendant.

69 MINNESOTA REPORTS.

the sole purpose of transferring the legal title to them, who were already the real owners of it.

It is impossible for plaintiffs to recover on this state of facts. It is clear that Lowe & Huggard had no actual authority, either express or implied, to sell and warrant this engine as the property of the defendant. Neither had the defendant clothed them with any apparent authority to do so, so as to create any estoppel by conduct against it. If it be held that the mere fact that a person has employed an agent to sell his property, intrusted to him for that purpose, clothes him with apparent authority to sell the property of a third party as the property of his principal, and that the principal would be estopped to deny the agent's authority to do so, it would never be safe for a person to employ a sales agent at all.

It is also claimed that defendant has ratified the acts of Lowe & Huggard by "accepting the fruits of the transaction" by indorsing the note over to Lowe & Huggard. But it is one of the elementary principles of the law of agency that, to constitute a ratification of the unauthorized act of an agent, the principal must have a knowledge of all the material facts, or intend to assume all liability for the act without such knowledge. In this case there is no evidence that defendant had any knowledge that Lowe & Huggard had assumed to sell the engine as its agent, or that the case was anything more than one where, in a transaction of their own, Lowe & Huggard had, for their own convenience, taken a note running to defendant instead of themselves. Defendant received no benefit from the transaction, but merely for the convenience of Lowe & Huggard indorsed the note so as to place the legal title where the real ownership was already. The evidence tends to show that plaintiffs have been wronged by Lowe & Huggard, or by their successors, Huggard, Larson & Co., but fails to prove any cause of action against the defendant.

The defendant moved the court to instruct the jury to find a verdict in its favor, and, after verdict, moved for judgment notwithstanding the verdict. It is therefore ordered that the cause be remanded, with instructions to order judgment in favor of the defendant notwithstanding the verdict.